UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

**Kelvin** & **Katina Coleman**
 *Plaintiffs*

**v.**   Jury Demanded

**Electrolux Home Products, Inc.**
 *Defendant*

## Complaint

Plaintiffs Kelvin and Katina Coleman bring this lawsuit timely against Defendant Electrolux Home Products, Inc., and allege the following:

**Parties**

1. Plaintiffs Kelvin and Katina Coleman are Tennessee citizens who reside in Mount Juliet, Cumberland County, Tennessee.

2. Defendant Electrolux Home Products, Inc. ("Electrolux"), is a Delaware corporation with a principal place of business in Charlotte, North Carolina. Electrolux may be served through its registered agent, CT Corporation System, at 800 South Gay Street, Suite 2021 in Knoxville, Tennessee.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over this lawsuit because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

4. This Court may exercise personal jurisdiction over the defendant because it resides, transacts business, and/or committed one or more of the acts that give rise to this lawsuit, in Tennessee.

5. Venue is proper in this district because this cause of action arose in Mount Juliet, Wilson County, Tennessee. *See* 28 U.S.C. § 1391(a)(2).

**Factual Allegations**

6. On or about September 11, 2012, a fire occurred at the home of Kelvin and Katina Coleman ("the Fire"). That home is located at 633 Belinda Parkway in Mount Juliet, Wilson County, Tennessee.

7. This is true and correct photograph of the home taken after the Fire:



8. The Fire originated within a residential electric clothes dryer that Electrolux designed, manufactured, assembled, inspected, tested, and placed into the stream of commerce in 2004 ("the Dryer").

9. The Dryer is the same or substantially similar in all material respects to other 5.7/5.8 Cu. Ft. dryers manufactured under its own trade names such Frigidaire, Gibson, Kelvinator, and Westinghouse, and which it manufactured under other names such as General Electric and Sears-Kenmore.

10. A wire from an underwire bra passed through one of the ventilation openings on the rear wall of the drum. From there, it entered the heater housing where it shorted to the energized heating element within. The resulting heat, sparks, or slag ignited nearby combustibles, causing the Fire.

11. This ignition could not have occurred without Electrolux designing the Dryer in such a way that brought foreseeable drum contents into contact with the energized heating element.

12. Electrolux does not warn consumers that placing small metallic objects, such as a bobby pin or an underwire bra, into the Dryer creates a fire hazard.

13. The Fire rendered the Coleman home unlivable, necessitating provisional housing. This is true and correct photograph of the home interior, with the red arrow indicating the dryer location:



14. The property and provisional housing damages caused by the Fire have not yet been finalized, but will likely exceed $160,000.

## Products Liability Claim

15. The Dryer is a tangible object or good produced.

16. The Dryer is a "product," as that term is defined by section 29-28-102(5) of the Tennessee Code.

17. Electrolux was the Dryer "manufacturer," as that term is defined by section 29-28-102(4) of the Tennessee Code.

18. Electrolux was also the apparent manufacturer of the Dryer and all of its components.[1]

19. Electrolux was also the Dryer "seller," as that term is defined by section 29-28-102(7) of the Tennessee Code.

20. The Dryer failed to perform in a manner reasonably expected in light of its nature and intended function when it failed and caused the fire.

21. The Dryer in the Coleman home had not been misused after its sale and prior to its failure.

22. The Dryer was within its expected useful life at the time of the Fire.

23. The Dryer failure was such that would not have occurred in the absence of a defect or unreasonably dangerous condition within that product.

24. Specifically, the Dryer was unreasonably dangerous and/or defective in that:

    a. it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics; and/or

---

[1] *See Travelers Indemnity Company v. Industrial Paper & Packaging Corp.* No. 3:02-CV-491, 2006 WL 3864857 at *8 (E.D. Tenn. December 18, 2006).

b. a reasonably prudent manufacturer would not have put it on the market assuming that manufacturer knew of CSST's dangerous condition.

25. That unreasonably dangerous condition and/or defect proximately caused the fire and the damage to the Colemans' home other property, in violation of the Tennessee Products Liability Act of 1978, Tenn. Code Ann. §§ 29-28-101 *et seq*.

26. Therefore, Electrolux is liable to the Colemans for all the aforementioned damages.

**Conditions Precedent**

27. All conditions precedent to bringing this lawsuit have been performed or waived.

**Relief Requested**

28. Wherefore, the Colemans respectfully request that they be awarded more than $160,000 in damages sustained because of the defendant's actionable conduct, including pre- and post-judgment interest, court costs, and any additional sums this Court deems appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Friday, October 04, 2013     Respectfully submitted,

QUIST, CONE & FISHER, PLLC

By: /s/ *Michael A. Durr*
    Michael A. Durr (TBA 26746)
    800 South Gay Street, Suite 2121
    Knoxville, Tennessee 37929
    Direct: 865/312-0440
    E-Mail: mdurr@qcflaw.com

*Attorney for Plaintiffs Kelvin & Katina Coleman*